UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOLEX INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 1715 |
| | ) | |
| GREGORY WYLER, an individual, | ) | Judge Ruben Castillo |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This opinion addresses Defendant Gregory Wyler's motion to strike, (R. 38-1). Wyler argues that we should excise certain portions of Plaintiff Molex Inc.'s ("Molex") Local Rule 56.1 statement of facts and certain arguments Molex made in its response to Wyler's motion to dismiss, which we converted to a motion for summary judgment on November 10, 2004.[1] (*Id.*) Specifically, Wyler argues that we should strike the following components of Molex's response and statement of facts: 1) Molex's argument that Section 4(B) of the parties' Settlement Agreement contains a scrivener's error; 2) evidence of an "oral agreement" that Wyler would indemnify Molex for its legal bills in the Massachusetts litigation; and 3) three paragraphs of Molex's Local Rule 56.1 statement of facts that Wyler argues are inadmissible hearsay. (*Id.* at 2, 4.) For the reasons set forth below, we grant Wyler's motion in part and deny it in part.

### I. Scrivener's Error

In his motion for summary judgment, Wyler argues that, under the express terms of the Settlement Agreement, the only representations and warranties that survive the Settlement

---

[1] A recitation of the facts alleged in this case can be found in this Court's previous opinion, *Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1085 (N.D. Ill. 2004).

Agreement's broad release are found in Section 4(B). (R. 18, Def.'s Summ. J. Mot. at 3-4.) Section 4(B) states that claims survive the release "if any of the representations and warranties in this Section (4)(B) is false in any material respect." (*Id.* at 3.) In response, Molex argues that Section 4(B)'s reference to "the representations and warranties in this Section (4)(B)" is an obvious scrivener's error because the Settlement Agreement's representations and warranties are set forth in Section 5 instead of section 4(B). (R. 29, Pl.'s Summ. J. Resp. at 9-12.) Section 4(B) is devoid of any representations or warranties. (*Id.* at 10-11.) Molex argues that "[u]nless the reference in Section 4(B), is properly read as 'Section 5,' this section makes absolutely no sense, and this clearly constitutes scrivener error that can and should be corrected by the Court." (*Id.* at 10.) In the present motion, Wyler argues that all evidence and arguments pertaining to scrivener's error should be stricken because Molex did not allege that error or seek reformation in its amended complaint.[2] (R. 38, Pl.'s Mot. to Strike at 2.)

In considering the parties' arguments, we bear in mind that under the Federal Rules of Civil Procedure a plaintiff's rights are not frozen with the complaint. *See Prescott v. Marine Bank Dane County*, 805 F.2d 719, 724 (7th Cir. 1986). The rules only require a complaint to provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Rouse-Randhurst Shopping Ctr.,*

---

[2] A scrivener's error is a clerical error resulting from "a minor mistake or inadvertence, esp. in writing or copying something on the record." *United States v. Gibson*, 356 F.3d 761, 766 n.3 (7th Cir. 2004) (quoting Black's Law Dictionary 563 (7th ed. 1999)). Illinois law recognizes equitable reformation as a cause of action to cure an error in a contract. *See Briarcliffe Lakeside Townhouse Owners Ass'n v. City of Wheaton*, 524 N.E.2d 230, 235 (Ill. App. Ct. 1988). A claim for reformation lies where a party shows that a contractual provision was included or omitted as a result of the parties' mutual mistake and that the parties had an actual agreement other than the one expressed in the writing. *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 197 (7th Cir. 1993).

2

*Inc. v. J.C. Penney Co., Inc.*, 171 F. Supp. 2d 824, 826 (N.D. Ill. 2001) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (quotations omitted)). The complaint need not list all claims or specify all legal theories. *Id.* Wyler is correct that generally, "a plaintiff cannot amend his complaint with a later filed brief," (R. 38, Pl.'s Mot. to Strike at 3 (citing *Teal v. City of Chi.*, 986 F. Supp. 1098, 1101 (N.D. Ill. 1997))), but a brief that incorporates facts developed in discovery can amend a pleading. *Umar v. Johnson*, 173 F.R.D. 494, 503 (N.D. Ill. 1997). For this reason, the complaint may be freely amended "as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant." *Id.* (quoting *Toth v. USX Corp.*, 883 F.2d 1297, 1298 (7th Cir. 1989).

Rule 15(b) of the Federal Rules of Civil Procedure gives this Court latitude to amend a complaint to conform with subsequent changes as a case develops. *Walton, M.D. v. Jennings Cmty. Hosp., Inc.*, 875 F.2d 1317, 1320 n.3 (7th Cir. 1989). The purpose of this rule "is to provide the maximum opportunity for each claim to be decided on its merits rather than on its procedural niceties." *Prescott*, 805 F.2d at 725 (internal quotation omitted). Rule 15(b) states that: "[s]uch amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment . . . ." The pleadings can be amended under Rule 15(b) "over the objection of another party, unless the objecting party can show that the introduction of evidence pertinent to issues not introduced in the pleadings would in some way prejudice his or her case." *Walton*, 875 F.2d at 1320 n.3; Fed. R. Civ. P. 15(b). This Court may conform the pleadings to the evidence at the summary judgment stage and even where there has been no formal motion by the parties. *Id.* (stating that "[a]lthough it is the judge rather than the parties who introduced the amendment,

and although the amendment was effected during consideration of a motion for summary judgment rather than at trial, it is fully consonant with the spirit of Rule 15(b) and existing case law to view the pleadings as constructively amended here").

After carefully considering Wyler's objections to the challenged evidence and arguments, we find that the equities of this case support a constructive amendment to conform Molex's complaint to the scrivener's error evidence under Rule 15(b). Wyler has not argued—and we do not believe that he could argue—that he will be prejudiced by the introduction of the scrivener's error evidence at this stage in the litigation. *See Walton*, 875 F.2d at 1320 n.3. In its amended complaint, Molex alleges that certain representations made by Wyler survive the Settlement Agreement's release, and it quotes Section 5 as "[t]he pertinent representations and warranties." (R. 13, Am. Compl. ¶¶ 18-20.) It is perfectly apparent from the face of the amended complaint that Molex is claiming the quoted representations and warranties survive through the provisions of Section 4(B). (*Id.*) Because Wyler has not argued that he was unfairly surprised that Molex believes that Section 4(B) was meant to refer to the representations in Section 5, and because we think Wyler had notice that this was Molex's theory, we will allow the amended complaint to conform to the scrivener's error evidence and theory. *See Creative Demos, Inc. v. Wal-Mart Stores, Inc.*, 142 F.3d 367, 371-72 (7th Cir. 1998) (stating that "[i]t is hard to quarrel" with a district court's decision to amend the pleadings to conform with evidence under Rule 15(b) where that "is really what the parties were arguing about at trial, although they did not use the magic words").

Of secondary consideration in this decision is our recognition that we advanced the parties to summary judgment relatively early in this litigation based on our desire to clarify the

4

parties' obligations prior to resolution of the underlying Massachusetts litigation—though neither party's actions to date have shown that they share our goal. We recognize that handling this case on an accelerated basis affected Molex's opportunity to request further amendments of its first amended complaint. While Molex perhaps could have been more diligent in drafting its complaint, we believe it is sufficiently transparent from the face of the amended complaint that Molex alleged that the representations and warranties referenced in Section 4(B) of the Settlement Agreement are those set forth in Section 5. The task we have been given in this case is to discover the true intention of the parties at the time the Settlement Agreement was drafted. *See Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 713 (7th Cir. 1993) (noting that the primary object in construing a contract under Illinois law is to give effect to the parties' intent). To exclude the scrivener's error evidence and arguments based on a procedural formality would only impede our ability to make that determination. We decline to prioritize form over substance where to do so would obstruct our ability to reach a just resolution on the merits of the case.

## II. "Oral Agreement" Evidence

Wyler next argues that we should strike from Molex's Local Rule 56.1 statement of facts evidence "of an unpled oral agreement made by Gregory that he would indemnify Molex and pay its legal bills." (R. 38, Pl.'s Mot. to Strike at 4.) Wyler again relies on three cases that stand for the proposition that new claims or defenses cannot be introduced at the summary judgment stage. (*Id.* (citing *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997); *Komperda v. Hartford Life & Accident Ins. Co.*, 02 C 5359, 2003 WL 21148023, at *3 (N.D. Ill. May 14, 2003); *Griesz v. Household Bank & Golden Seal Heating*, 8 F. Supp. 2d 1031, 1041-42 (N.D. Ill. 1998))). Molex has not asserted a new claim by introducing evidence that Wyler offered to pay Molex's defense

bills in the Massachusetts litigation. Wyler's statements are directly relevant to the parties' understanding of their obligations under the Purchase and Settlement Agreements. Specifically, Wyler's statements are relevant to his state of mind regarding his defense obligations at the time that Molex discovered Wyler's father's assertion of interest in Silent Systems, Inc. Molex has not introduced this evidence in support of some unpled claim, but rather to shed light on the relevant issues in this case.[3] As a result, we deny Wyler's motion to strike the evidence of Wyler's statements regarding his intention to defend and indemnify Molex.

### III. Hearsay Objections

Finally, Wyler argues that paragraphs 19, 35, and 42 of Molex's Local Rule 56.1 statement of facts contain inadmissible hearsay and should be stricken. (R. 38, Pl.'s Mot. to Strike at 4.) Paragraph 19 of Molex's statement of facts includes an excerpt from an email that Molex's general counsel, Louis A. Hecht, sent to Wyler. (R. 30, Pl.'s Facts ¶ 19.) Paragraph 19 is supported by citation to paragraph 7 of Hecht's affidavit, which contains the same excerpt. The excerpt is as follows:

> . . . it is fair to have reciprocal releases. That is, both parties should continue to be responsible for their obligations under all of the agreements except with respect to the put, the employment agreement and the noncompetition agreement as is set forth in section 7 of the settlement,. [sic] In other words, section 7 should be applicable to both parties — not just you.
>
> It is unrealistic to expect Molex to give up all potential claims unrelated to the matter at hand . . . .

(Id. ¶ 19.) Hearsay is "a statement, other than one made by the declarant while testifying at the trail or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid.

---

[3] If Molex does intend to state a separate claim based on Wyler's statements, it should bring a motion to conform the pleadings to the evidence under Rule 15(b).

801(c). The disputed email excerpt is not submitted to prove the truth of the matter asserted. It matters not whether Hecht was truthful when he said "it is fair to have reciprocal releases," that "both parties should continue to be responsible," and so on. Instead, the email is introduced to demonstrate the effect the email had on Wyler's understanding of the mutuality of the releases during the drafting of the Settlement Agreement. As a result, the email excerpt in paragraph 19 is admissible. *U.S. v. Inglese*, 282 F.3d 528, 538 (7th Cir. 2002) (noting that a statement offered to show its effect on the listener is not hearsay). Even if the statement is submitted to prove the truth regarding Hecht's state of mind regarding the appropriate contractual provisions at the time the Settlement Agreement was drafted, the email excerpt qualifies under the state of mind exception to the hearsay rule.[4] *See* Fed. R. Evid. 803(3) (stating that a "statement of the declarant's then existing state of mind . . . such as intent, plan, motive . . ." is not excluded by the hearsay rule).

Nor do the statements in paragraphs 35 and 42 constitute hearsay. The statements referenced in those paragraphs constitute admissions by a party-opponent. Fed. R. Evid. 801(d)(2). Paragraph 35 describes a conversation between Wyler and a Molex employee named Eric J. Doesburg. (R. 30, Pl.'s Facts ¶ 35.) The two out-of-court statements made in that paragraph are as follows: 1) "Wyler expressed his embarrassment and sadness that his father made this claim, and assured Doesburg that his father had released him from any such claim;" and 2) Wyler "promised to send a copy of the release to Doesburg . . . ." (*Id.*) The paragraphs of the Zeitler affidavit referenced in paragraph 42 of Molex's statement of facts contain the

---

[4] We also note that it would be permissible for Hecht to testify at trial regarding all of the statements in the email, since they are based on his first-hand knowledge of what he wrote to Wyler regarding his own state of mind during the contract-drafting process.

7

following two out of court declarations: 1) "[Wyler] apologized for his father's actions and provided some factual background"; and 2) "We concluded that conversation with [Wyler's] express acknowledgment to me that he recognized his obligation to Molex and that he would reimburse Molex for 'our legal bills' incurred in the defense of his father's suit."[5] (*Id.*, Ex. 2, Zeitler Aff. ¶ 18.) All of the statements cited in paragraphs 35 and 42 are Wyler's own statements offered against him and are therefore admissible as admissions of a party-opponent. Fed. R. Evid. 801(d)(2). Wyler's motion is thus denied to the extent that he asks the court to strike paragraphs 19, 35, and 42 of Molex's Local Rule 56.1 statement of facts.

Wyler additionally asks us to strike Exhibit A to the Doesburg Affidavit and Exhibit A to the Zeitler Affidavit, which are comprised of the handwritten notes that Doesburg and Zeitler took during their respective telephone conversations with Wyler. (R. 30, Pl.'s Facts, Ex. 2(A), Zeitler Notes & Ex. 5(A), Doesburg Notes.) Molex responds that the notes are admissible as business records under Rule 803(6) and as recorded recollections under Rule 803(5). (R. 46, Pl.'s Resp. at 6.) The notes do not appear to be documents that are kept in the regular course of business activity, and because they are handwritten and unsigned, they do not carry the level of trustworthiness that Rule 803(6) requires of business records. Fed. R. Evid. 803(6); *see also Yonehara v. Am. Airlines, Inc.*, No. 02 C 8561, 2004 WL 2222184, at *7-8 (N.D. Ill. Sept. 30, 2004). Nor do they qualify as recorded recollections. Nothing in either the Doesburg or Zeitler affidavit indicates that the handwritten notes are submitted to correct an insufficient recollection

---

[5]We note that paragraph 42 of Molex's Local Rule 56.1 statement of facts does not contain any out-of-court statements. We assume that Wyler has requested us to strike this paragraph because the portions of the Zeitler affidavit cited in paragraph 42 contain out-of-court statements.

8

of their conversations with Wyler. *See* Fed. R. Evid. 803(5).

The handwritten notes may qualify, however, as present sense impressions under Rule 803(1). Statements that "describ[e] or explain[] an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" are not excluded by the hearsay rule. Fed. R. Evid. 803(1). There are three criteria for the admission of statements pursuant to this rule: "1) the statement must describe an event or condition without calculated narration; 2) the speaker must have personally perceived the event or condition described; and 3) the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter." *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001). Statements that meet these criteria are trustworthy because they "minimize[] unreliability due to defective recollection or conscious fabrication." *Id.* at 646-67 (internal quotations omitted); *see also Alexander v. CIT Tech. Fin. Servs., Inc.*, 217 F. Supp. 2d 867, 882-83 (N.D. Ill. 2002).

Zeitler and Doesburg's notes are free of any obviously calculated narration; the notes simply report details from their respective telephone calls with Wyler. (R. 30, Pl.'s Facts, Ex. 2(A), Zeitler Notes & Ex. 5(A), Doesburg Notes.) Both Zeitler and Doesburg were parties to the telephone conversations and thus personally perceived the events described in the notes. The notes diverge in their qualification under the third prong. Zeitler averred that he took the notes contemporaneously with the recorded conversation. (*Id.*, Ex. 2, Zeitler Aff. ¶ 18.) His notes thus meet all of the requirements under the present sense impression test and will be admitted. While Doesburg averred that he took the notes of his conversations with Wyler which are annexed as Exhibit A to his affidavit, he did not specify that he took those notes contemporaneously with the conversations or immediately thereafter. (*Id.*, Ex. 5, Doesburg Aff. ¶¶ 6-7.) As a result, we

9

cannot at this time admit his notes as a present sense impression. Doesburg is free to amend his affidavit to clarify the time frame in which he took the appended notes if he so chooses, at which point we may reconsider our ruling striking Exhibit A to the Doesburg affidavit.

## CONCLUSION

For the reasons set forth above, Wyler's Motion to Strike, (R. 38-1), is granted in part and denied in part. The motion is denied to the extent that it seeks to exclude the following: 1) Molex's evidence and arguments regarding a scrivener's error in Section 4(B) of the Settlement Agreement; 2) Molex's evidence regarding Wyler's statements that he would indemnify and defend Molex in the Massachusetts litigation; and 3) paragraphs 19, 35, and 42 of Molex's Local Rule 56.1 statement of facts and Exhibit 2(A) to Molex's Local Rule 56.1 statement of facts. Wyler's motion is provisionally granted as to Exhibit 5(A) of Molex's Local Rule 56.1 statement of facts.

We note that Wyler withheld his response to many of the facts set forth in Molex's Local Rule 56.1 statement of facts pending the resolution of the present motion. (*See* R. 35, Def.'s Resp. to Pl.'s Facts.) Wyler is given until Thursday, February 24, 2005 to update its response to those facts in light of this opinion. We again strongly urge the parties to exhaust any remaining settlement possibilities.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: February 17, 2005