UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOLEX INCORPORATED, a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 04 C 1715 |
| GREGORY T. WYLER, | ) ) | Judge Ruben Castillo |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This case—which stems from the collision of a family dispute with a corporate stock transaction—centers on whether Defendant Gregory T. Wyler ("Wyler") is bound contractually to defend Plaintiff Molex Inc. ("Molex") in litigation currently underway in Massachusetts state court. Molex has sued Wyler alleging breach of contract and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("Illinois Consumer Fraud Act") and Massachusetts General Laws Chapter 93A. Presently before this Court is Wyler's motion to dismiss, (R. 18-1), which we converted to a motion for summary judgment on November 10, 2004, (R. 19). For the reasons set forth below, we deny Wyler's motion.

### RELEVANT FACTS

**A.   The Parties**

Molex is a Delaware corporation with a principal place of business in Lisle, Illinois. (R. 60, Def.'s Supp. Resp. to Pl.'s Facts ¶ 1.) Wyler is a citizen and resident of Manchester-by-the-Sea, Massachusetts. (*Id.* ¶ 2.) Prior to August 26, 1998, Wyler was the Chief Technical Officer and ostensible owner of a majority (53.54%) of the shares in a company called Silent Systems,

Inc. ("Silent"). (*Id.* ¶¶ 3, 5.)

**B.     The Purchase Agreement**

On August 26, 1998, Molex entered into a Stock Purchase Agreement ("Purchase Agreement") with Silent, through which Molex agreed to purchase all of Silent's outstanding and issued shares. (*Id.* ¶ 3.) Section 8.2 of the Purchase Agreement is a defense and indemnification clause which states that Wyler will hold Molex harmless:

> for any and all loss, damage, expense (including court costs, amounts paid in settlement, judgments, attorneys' fees and other expenses for investigating and defending), suit, action, claim, deficiency, liability or obligation (collectively, "Losses") related to, resulting from, caused by or arising from . . . (iii) any claims made by Stockholders, Optionholders or Persons who claim any direct or indirect, past or present, right in or to any capital stock of or equity interest in, the Company, . . . including any inaccuracy in, or breach of, Section 3.5."

(*Id.* ¶ 9.) In Section 3.5 of the Purchase Agreement, both Wyler and Silent represented and warranted that all of Silent's outstanding capital stock was owned by the stockholders listed in Schedule 3.5. (*Id.* ¶ 6.) Schedule 3.5 identifies Wyler as the owner of 770,000 shares, and Wyler's brother, Geoffrey Wyler, Jr., as an option-holder. (*Id.* ¶ 7.) There is no reference anywhere in Schedule 3.5 or in any other provision of the Purchase Agreement to any ownership interests held or claimed by Wyler's father, Geoffrey Wyler. (*Id.* ¶ 8.)

The Purchase Agreement set up a two-phase transaction. (*Id.* ¶ 4.) In the first phase, Molex would acquire only 70% of the Silent stock, all of which Wyler claimed to own. (*Id.*) The remaining 30% of the stock—again, all of which Wyler claimed to own—was subject to a put/call provision in the second and final phase of the transaction.[1] (*Id.*) The first phase of the

---

[1] The parties' factual submissions create some confusion as to the quantity of Silent shares held by Wyler. The parties agree that Wyler owned 53.54% of the outstanding Silent shares, (*id.* ¶ 5), but also state that "[t]he transaction was to be phased and Molex would acquire only

transaction was completed on September 4, 1999 when Molex paid approximately $15,000,000 to acquire 70% of Silent's stock. (*Id.* ¶ 10.) Wyler received approximately $5,700,000 of that amount. (*Id.*) Wyler exercised his put option more than a year later, obligating Molex to acquire the balance of the Silent shares. (*Id.* ¶ 11.)

C.   **Settlement Agreement**

At the time that Wyler exercised his put option, a dispute arose regarding the calculation of the purchase price for his remaining shares. (*Id.* ¶ 12.) To resolve this dispute, Molex, Silent, and Wyler entered into a settlement agreement ("Settlement Agreement"). (*Id.*) In Section 4(A) of the final version of the Settlement Agreement, Molex provided a release to Wyler under which it:

> absolutely, fully and forever release[d], waive[d], relinquish[ed] and discharge[d] any and all Claims (defined below) whatsoever which any of the Molex Parties may have had, may presently have, or in the future may have against each of the Company and the Wyler Parties, which arise, have arisen or may in the future arise in whole or in part out of or on account of any matter or thing whatsoever occurring on or before the date hereof relating to the Stock Purchase Agreement . . . .

(R. 48, Pl.'s Resp. to Def.'s Add'l Facts ¶ 1.) The term "Claims" is defined broadly in the Settlement Agreement as:

> any and all manner of claims, demands, damages, liabilities, obligations, actions, causes of action, suits, debts, sums of money, accounts, reckonings, bonds, liens, indemnities, bills, specialties, trespasses, judgments, and executions, whatsoever, in law or in equity of any kind, nature or description whatever, whether known or unknown (and if unknown, regardless of whether knowledge of the same may have affected the decision to make this release), liquidated or unliquidated, disputed or undisputed, fixed or contingent, mature or unmatured or based on contract, tort, state or federal statute or other legal equitable theory of recovery, which now exist or

---

seventy percent (70%) of the stock, all claimed to be owned by Wyler, in the initial phase," (*id.* ¶ 4). We do not need to resolve this discrepancy, however, because the specific quantity of shares owned by Wyler prior to the Purchase Agreement is not relevant to this decision.

which may hereafter arise based on any fact or circumstance arising or occurring on or at any time prior to the date hereof.

(*Id.* ¶ 2.)

Section 4(B) of the Settlement Agreement, entitled "Survival of Certain Obligations and Claims," sets forth some exceptions to the broad release in Section 4(A). The survival clause states that:

> [n]otwithstanding anything that may be construed to the contrary herein, Wyler shall remain obligated to Molex with respect to any past, present or future Claims that arise under (i) that certain Non-Competition Agreement dated on or about September 4, 1998 among Wyler, the Company and Molex, (ii) Section 3 of the Employment Agreement relating to confidentiality, (iii) any technical fraud in connection with this Agreement, and (iv) if any of the representations and warranties in this Section (4)(B) is false in any material respect. Nothing herein shall be construed to release any party from its express obligations under this Agreement.

(*Id.* ¶ 3.) In Section 5(A), Wyler made several representations to induce Molex to enter into the Settlement Agreement. (*Id.* ¶ 4.) That section, entitled "Representations and Warranties," reads as follows:

> (a) Wyler's Representations: To induce Molex to enter into this Agreement, Wyler represents and warrants that:
>
> (1) He owns the Shares, free and clear of all liens or other restrictions of any kind and no one else has any interest or claim of any kind in such Shares;
> (2) He does not own or have a right to acquire any debt or equity securities, or any option or warrant of the Company, other than the Shares; and
> (3) He has the capacity and authority to execute and deliver this Agreement to consummate the transactions contemplated thereby.

(*Id.* ¶ 4.) The parties finalized and signed the Settlement Agreement on February 29, 2000.

(R. 60, Def.'s Supp. Resp. to Pl.'s Facts ¶ 14.)

4

### D. The Massachusetts Litigation

After the Settlement Agreement was finalized, Wyler notified Molex in September 2000 that Wyler's father claimed he was the co-owner of the Silent shares that Molex had purchased from Wyler. (R. 47, Pl.'s Resp. to Def.'s Facts ¶ 13.) Wyler assured Molex that his father had no interest in Silent and forwarded to Molex a release from his father. (*Id.*) The portion of the release signed by Wyler's father reads as follows:

> Ex. A, A part of The Release between Geoffrey D. Wyler & Gregory T. Wyler
> If Silent Systems goes public, and if I own Shares,* Then I shall be entitled to the value, sale $ of such shares. Otherwise I have no interest in Silent Systems. In any event, Silent Systems, Inc. releases any claim it has or thinks it has against Geoffrey D. Wyler, Sr.

(R. 30, Pl.'s Facts Ex. B to Doesburg, Release.) In the summer of 2001, Wyler's father filed suit against Wyler and Molex in Massachusetts state court seeking, among other things, rescission of the stock purchase transaction and a constructive trust. (R. 47, Pl.'s Resp. to Def.'s Facts ¶ 14.) That litigation is currently pending.

### E. Procedural History

On March 4, 2004, Molex filed an eight-count complaint against Wyler in this Court alleging—among other things—that Wyler is obligated under the Purchase Agreement to defend and indemnify Molex in the Massachusetts litigation and that nothing in the Settlement Agreement relieved him of that obligation. (*Id.* ¶ 15.) Wyler filed a motion to dismiss the original complaint on May 4, 2005, which we granted without prejudice. (*Id.* ¶¶ 16-17.) Molex then filed a motion to reconsider our dismissal, which we granted in part and denied in part on September 1, 2004. (*Id.* ¶ 18.) Upon reconsideration, we held that Molex's claims with respect to Wyler's duty to indemnify Molex for any judgment in the Massachusetts litigation are unripe

5

during the pendency of that litigation. *See Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1090 (N.D. Ill. 2004). We held that Molex could proceed, however, with its claims that Wyler has a duty to defend Molex in the Massachusetts litigation. (*Id.*) Molex filed its amended complaint on October 6, 2004. (R. 13.) Wyler filed the present motion on November 8, 2004. (R. 18-1.)

## LEGAL STANDARDS

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In resolving a summary judgment motion, the Court will neither decide factual disputes nor weigh conflicting evidence, but instead will limit its inquiry to whether a genuine issue of material fact exists for trial. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). While we will consider all facts in the light most favorable to the non-moving party, to avoid summary judgment the non-moving party must submit competent and specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990).

## ANALYSIS

Wyler argues that all of Molex's claims fail because the Settlement Agreement releases Wyler from liability and because Molex's fraud claims are dependent on the outcome of the Massachusetts litigation and therefore are unripe.[2] (R. 18, Def.'s Summ. J. Mem. at 1-5.) In

---

[2]Wyler also moved in the alternative for a stay pursuant to the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). (R. 18, Def.'s Summ. J. Mem. at 9-11.) We denied that aspect of Wyler's motion by order dated November 10, 2004. (R. 19.)

6

response, Molex argues that Section 4(B)(iv)'s reference to "the representations and warranties in this Section 4(B)" is an obvious scrivener's error and that both parties intended for the representations and warranties set forth in Section 5 to survive the release.[3] (R. 29, Pl.'s Summ. J. Resp. at 9-12.) Molex further responds that even if the representations and warranties in Section 5 do not survive the Settlement Agreement's release, Wyler committed technical fraud in failing to disclose his father's claims to the Silent shares and those claims survive the release.[4] (*Id.* at 12-13.) We will address the parties' arguments pertaining to the ripeness of Molex's claims before turning to the questions pertaining to the Settlement Agreement's release.

I.  Ripeness

Wyler argues that all of Molex's claims are unripe because they are subject to the Settlement Agreement's release unless Molex shows that Wyler procured that agreement by misrepresentation or fraud. (R. 18, Pl.'s Summ. J. Mem. at 8-9.) Wyler argues that to prove misrepresentation or fraud, Molex would have to demonstrate that Wyler was not the sole owner of the Silent shares, which is the same question being decided in the Massachusetts litigation. (*Id.* at 8.) Wyler further reasons that "[t]he fact that the outcome of the Massachusetts litigation could effectively end all of Molex's claims makes them unripe and not justiciable until the outcome of the Massachusetts litigation." (*Id.* at 9.) We disagree.

---

[3]On February 17, 2005 we denied Wyler's motion to strike all evidence and arguments pertaining to this alleged scrivener's error. (R. 52.)

[4]Molex also argued that Wyler's motion should be denied because he had not submitted a Local Rule 56.1 statement of facts as of the date that Molex filed its response. (*Id.* at 7-9.) This argument is now moot because we allowed Wyler to submit his statement of facts, (R. 42, Def.'s Facts), and Molex was given a full opportunity to respond to that statement of facts, (R. 47, Pl.'s Resp. to Def.'s Facts).

7

"The doctrine of ripeness is based on both constitutional and prudential grounds." *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992). Article III of the Constitution requires federal courts to adjudicate "cases or controversies," and to avoid issuing advisory opinions. *Id.* This concept stems from "the central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute." *Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004) (internal quotation omitted). A case is not ripe for adjudication where "the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Hinrichs*, 975 F.2d at 1333. In determining whether a case is ripe, courts will consider two factors: 1) whether the issue is fit for judicial decision; and, if not, 2) whether there will be any hardship to the parties if we withhold consideration. *Texas v. United States*, 523 U.S. 296, 300-01 (1998) (citing *Abbot Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

The question of whether Wyler engaged in fraud or misrepresentation is not a "hypothetical, speculative, or illusory dispute." Instead, it is a question that is currently fit for judicial determination and can be answered based upon facts that are not speculative: namely, the nature of Wyler's representations in the Settlement Agreement and whether Wyler unlawfully withheld information from Molex in making those representations. In this way, Molex's fraud and misrepresentation claims differ from its previous claim that Wyler has a duty to indemnify Molex in the Massachusetts litigation. We held that the indemnity question was not ripe during the pendency of the Massachusetts litigation because there may never be a judgment in that litigation for Wyler to indemnify. *See Molex Inc.*, 334 F. Supp. 2d at 1087-88. There is no such unresolved contingency hampering our ability to resolve Molex's fraud allegations or any of the other claims alleged in its amended complaint.

8

Wyler's ripeness arguments are based on his misconception that "unless and until the Massachusetts Courts decide that [Wyler] was not the sole owner of the shares, any claims to void the Settlement Agreement based upon fraud are hypothetical and unripe." (R. 18, Pl.'s Summ. J. Mem. at 8.) This argument fails for two reasons. First, this Court is perfectly capable of determining Wyler's ownership status at the time of the Settlement Agreement without awaiting judgment from the Massachusetts court. As discussed above, this is an actual, concrete dispute that can be resolved based on presently-available facts. Second, even if we accepted Wyler's notion that we must wait for the Massachusetts court to determine his previous ownership interests, that finding would not necessarily be outcome-determinative in this case. If the Massachusetts court finds that Wyler's father has no actual interest in the Silent shares, we could nonetheless find that Wyler knew at the time of the Settlement Agreement that his father intended to or was prepared to make such a claim and failed to disclose that knowledge.[5] Thus, it is possible that Wyler could win in Massachusetts state court and still be held liable in this Court. For all these reasons, we find that the fraud and misrepresentation claims—along with all of the other claims in Molex's amended complaint—are ripe for adjudication.

## II. Molex's Release of Claims

Wyler's chief argument in favor of summary judgment is that all of Molex's claims were

---

[5]Wyler represented in the Settlement Agreement that he owned the Silent shares free of "all liens or other restrictions of any kind and no one else has any interest or claim of any kind in such Shares." (R. 48, Pl.'s Resp. to Def.'s Add'l Facts ¶ 4.) The Settlement Agreement defines "claim" very broadly to include "any and all manner or claims . . . causes of action . . . whatsoever . . . whether known or unknown . . . ." (*Id.* ¶ 2.) Given this broad definition, we could find that the parties intended to preserve Wyler's liability in the event that any party made a claim to Silent shares after the date of the Settlement Agreement even if the claim was unknown at the time the parties signed the Settlement Agreement.

released through the Settlement Agreement. (R. 18, Def.'s Summ. J. Mem. at 5-8; R. 34, Def.'s Summ. J. Reply at 6-8.) Molex counters that its claims survive the release either through Section 4(B)(iv)'s representation and warranties survival provision or Section 4(B)(iii)'s technical fraud survival provision. (R. 29, Pl.'s Summ. J. Resp. at 9-13.) This dispute requires this Court to resolve the parties' competing interpretations of the Settlement Agreement's release and survival clauses pursuant to Illinois contract principles.[6]

Matters of contract interpretation are squarely within the court's competency, and thus often lend themselves to resolution at the summary judgment stage. *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771 (7th Cir. 2000). Under Illinois law, contract interpretation—including the question of whether or not a contract is ambiguous—is a legal question for the courts to determine. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998); *WH Smith Hotel Servs., Inc. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 427 (7th Cir. 1994) (citing *A.W. Wendell & Sons, Inc. v. Qazi*, 626 N.E.2d 280, 292 (Ill. App. Ct. 1993)). The primary goal of contract interpretation is to give effect to the intention of the parties as set forth in the language of the contract. *Omnitrus Merging Corp. v. Ill. Tool Works, Inc.*, 628 N.E.2d 1165, 1168 (Ill. App. Ct. 1994). In construing a contract, the courts first determine whether it is unambiguous by interpreting the contract according to its plain language and "in light of the concrete circumstances in which it was written." *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 565 (7th Cir. 1995). "If no ambiguity exists in the language of the contract, the parties' intent must be derived by the writing itself as a matter of law." *A.W. Wendell & Sons*, 626

---

[6]There is no dispute that the Settlement Agreement is to be interpreted according to Illinois law. (*See* R. 18, Pl.'s Summ. J. Mem., Ex. A, Settlement Agreement ¶ 6.)

10

N.E.2d at 292. A contract is unambiguous if it is subject to only one reasonable interpretation. *Id.*

A contract is ambiguous if it is "reasonably or fairly susceptible to having more than one meaning[.]" *Bourke*, 159 F.3d at 1036; *see also Flora Bank & Trust v. Czyzewski*, 583 N.E.2d 720, 725 (Ill. App. Ct. 1991). A contract is intrinsically ambiguous where "what the contract says is simply not clear on its face." *Id.* at 1037. Where an ambiguity exists after the court refers to the language and context of the entire agreement, then "the door would be opened to extrinsic evidence" to resolve that ambiguity. *Id.* Extrinsic evidence may be used to show that a contract is ambiguous, but it may not be submitted to create an ambiguity. *Murphy*, 61 F.3d at 565 (noting that extrinsic evidence may be offered to interpret but not to contradict a contract). The construction of an ambiguous contract is a question for a trier-of-fact. *Bourke*, 159 F.3d at 1037; *Metalex Corp. v. Uniden Corp. of Am.*, 863 F.2d 1331, 1333 (7th Cir. 1988).

Bearing these core principles of Illinois contract law in mind, we now turn to the parties' arguments regarding the meaning of the Settlement Agreement's release and survival clauses.

### A. Section 4(B)(iv): Survival of Representations and Warranties

The parties have widely divergent views regarding the meaning of the survival clause found in section 4(B)(iv) of the Settlement Agreement. Wyler argues that Molex's claims rely on representations and warranties which — from the plain language of Section 4(B)(iv)—do not survive the Settlement Agreement's broad release. (R. 18, Def.'s Summ. J. Mem. at 3-8.) Wyler argues that Molex's claims stem from the representations and warranties in Section 5(A) while the only representations and warranties that survive the release are those found "in this Section (4)(B)." (*Id.* at 3-4.) In response, Molex argues that Section 4(B)(iv)'s reference to the

"representations and warranties in this Section (4)(B)" is a scrivener's error and that the parties intended that subsection to reference the representations and warranties in Section 5. (R. 29, Def.'s Summ. J. Resp. at 9-12.) In support of this argument, Molex has submitted extrinsic evidence in the form of prior drafts of the Settlement Agreement and affidavits from the drafters attesting to that error. (R. 30, Def.'s Facts, Ex. 4, Hecht Aff. & Exs. 4(A-D), Draft Agreements.)

Although these competing interpretations of the Settlement Agreement's survival clause are insufficient alone to establish contractual ambiguity, *see Flora Bank and Trust*, 583 N.E.2d at 725, we nonetheless find after reviewing the plain language of Section 4(B)(iv) in the context of the Settlement Agreement as a whole that this subsection of the survival clause is ambiguous. Section 4(B) states that: "Wyler shall remain obligated to Molex with respect to any past, present or future Claims that arise under . . . (iv) if any of the representations and warranties in this Section (4)(B) is false in any material respect." (R. 48, Pl.'s Resp. to Def.'s Add'l Facts ¶ 3.) If there were any representations and warranties set forth in Section 4(B), we might agree with Wyler that the meaning of this section with respect to which representations and warranties survive the release is unambiguous. The problem with Wyler's argument, however, is that he has not explained what those representations and warranties are. (*See, e.g.*, R. 18, Def.'s Summ. J. Mem. at 4.) We cannot find a single representation or warranty set forth in Section 4(B). As a result, the meaning of the reference to the representations and warranties "in this Section 4(B)" is simply not clear from its face. It is clear, however, that Wyler's proposed interpretation renders Section 4(B)(iv) meaningless.

Because Section 4(B)(iv) is ambiguous on its face, we find that the meaning of that section must be determined by a fact-finder. *Bourke*, 159 F.3d at 1037. While we have reached

this conclusion without considering Molex's evidence of scrivener's error, that evidence certainly supports our finding that Wyler is not entitled to summary judgment as to the meaning of Section 4(B)(iv).[7] The scrivener's error evidence presents a reasonable explanation for the parties' intent in drafting Section 4(B)(iv), and though Wyler argues that Molex has not proven the existence of a scrivener's error, (*see* R. 34, Def.'s Summ. J. Reply at 12-15), it is not Molex's burden to prove scrivener's error in response to Wyler's summary judgment motion. Instead, it is sufficient for Molex to present evidence that raises a genuine issue of fact regarding the meaning of Section 4(B)(iv). *See Becker*, 914 F.2d at 110 (noting that non-moving party must only present specific and competent facts that raise a genuine issue of fact to avoid summary judgment). Molex has done so here.

Having established that there is a genuine issue of fact as to what representations and warranties survive the release under Section 4(B)(iv), we must determine whether that fact issue is material. Wyler argues that it is not, because even if Section 4(B)(iv) contains a scrivener's error, the revised survival language would not resurrect Wyler's duty to defend Molex as set forth in the Purchase Agreement. Once again, however, Wyler's interpretation of the survival clause is not the only reasonable interpretation. Section 4(B)(iv) states that: "Wyler shall remain obligated to Molex with respect to any past, present or future Claims that arise under . . . (iv) if any of the representations and warranties in this Section (4)(B) is false in any material respect."

---

[7]In its response brief, Molex requested that we enter summary judgment in its favor on the issue of the enforceability of the representations and warranties in Section 5 of the Settlement Agreement. (R. 29, Pl.'s Summ. J. Resp. at 14.) We decline to do so. First, it is improper to request entry of judgment in a response brief without submitting a cross-motion for summary judgment. *Perez v. United States*, 850 F. Supp. 1354, 1357, n.1 (N.D. Ill. 1994). Second, because we have found that the Settlement Agreement's survival clause is ambiguous, there is an issue of fact as to which representations survive, if any. *Bourke*, 159 F.3d at 1037.

(R. 48, Pl.'s Resp. to Def.'s Add'l Facts ¶ 3.) There is ambiguity as to the scope of this provision because it is unclear how to read the word "under" just before subclause (iv) together with the word "if" at the beginning of subclause (iv). Wyler's interpretation of this clause would have us read it along the lines of: "Wyler shall remain obligated to Molex with respect to any past, present or future Claims that arise under any of the representations and warranties in this Section (4)(B) if they are false in any material respect." (R. 34, Def.'s Summ. J. Reply at 6.) That interpretation would limit Molex's claims to those arising from the misrepresentation itself.

Section 4(B)(iv) is equally susceptible, however, to the following reading: "Wyler shall remain obligated to Molex with respect to any past, present or future Claims that arise if any of the representations and warranties in this Section (4)(B) is false in any material respect." Under this interpretation, the clause could be understood to open the door to any past, present, or future claims of any kind in the event that Wyler engaged in misrepresentation in connection with the Settlement Agreement. In other words, the parties could have intended that the release would dissolve entirely in the even that Wyler lied in the pertinent representations and warranties.[8] Both interpretations of Section 4(B)(iv) require a variance from the plain language of the paragraph. The language of the paragraph, however, is simply not clear as written. Thus we find that an issue of fact exists as to the scope of Section 4(B)(iv) and that this fact issue is material because its resolution is necessary to determine whether Wyler is obligated to defend Molex in the Massachusetts litigation.

---

[8] We recognize Wyler's reasoning that if the parties had intended the Purchase Agreement's duty to defend to survive the release they would have said so expressly. (R. 34, Def.'s Summ. J. Reply at 7.) Nonetheless, because it is not clear from the face of Section 4(B)(iv) what the parties' true intention was, that is a disputed material fact.

### B. Section 4(B)(iii): Technical Fraud

Wyler's argument that "every claim that Molex is attempting to put forward has been released through the Settlement Agreement," (R. 18, Def.'s Summ. J. Mem. at 2, 5), also ignores the effect of the survival clause pertaining to technical fraud. Section 4(B)(iii) states that "Wyler shall remain obligated to Molex with respect to any past, present, or future Claims that arise under . . . (iii) any technical fraud in connection with this Agreement . . . ." (R. 48, Pl.'s Resp. to Def.'s Add'l Facts ¶ 3.) In contrast to Section 4(B)(iv), the meaning of this subsection clause is clear; it states that Molex has not released Wyler from liability based on any claims that "arise under" technical fraud in connection with the Settlement Agreement. Neither party has suggested an alternative reading to this provision or otherwise created doubt that this is the proper interpretation of Section 4(B)(iii). As a result, we find that the meaning of this section is unambiguous.

Given the plain language of Section 4(B)(iii), we cannot agree with Wyler that Molex has released all of its claims through the Settlement Agreement, including its fraud claims. (*See* R. 18, Def.'s Summ. J. Mem. at 2.) Counts four and five are claims for fraud under state statutes, while counts one and three expressly state that if the Settlement Agreement is deemed to relieve Wyler of his duty to defend, then the release is unenforceable because it was procured by Wyler's fraud and misrepresentation. (R. 13, Am. Compl. at 6-8.) Since each of these claims hinge on Wyler's alleged technical fraud in procuring the Settlement Agreement through misrepresentation, those claims survive the release under Section 4(B)(iii).

Moreover, we find that Molex has shown that Wyler is not entitled to summary judgment on the issue of whether Wyler's failure to disclose his father's previous claim to ownership of

15

Silent shares constitutes technical fraud under Section 4(B)(iii). Molex argues that Wyler committed technical fraud "when he failed to disclose to Molex the fact that [Wyler's] father had asserted a claim prior to the execution and consummation of the [Purchase] agreement and thus well before the Settlement Agreement." (R. 29, Pl.'s Summ. J. Resp. at 12.) Wyler represented to Molex in the Settlement Agreement that he owned the Silent shares and that "no one else has any interest or claim of any kind in such shares." (R. 48, Pl.'s Resp. to Def.'s Add'l Facts ¶ 4.) The Settlement Agreement defines the term "claims" to include those which were "known or unknown" at the time the Settlement Agreement was signed. (*Id.* ¶ 2.) Molex has submitted competent evidence demonstrating that Wyler was aware before signing either the Purchase or Settlement Agreement that his father had made a claim to Silent's shares.[9] (R. 30, Pl.'s Facts, Ex. B to Doesburg, Release.) Thus, Molex has raised a genuine issue of fact as to whether Wyler committed actionable fraud in making his representations and warranties in the Settlement Agreement.

Wyler is not entitled to summary judgment because this Court could find that Wyler intentionally committed fraud by failing to disclose the existence of this release to Molex at the

---

[9]Further, Molex's evidence suggests that there was some contingency in Wyler's father's release. As noted above, Wyler's father's release states: "If Silent Systems goes public, and if I own Shares,* Then I shall be entitled to the value, sale $ of such shares." (R. 30, Pl.'s Facts, Ex. 5(B), Release.) Though Wyler contends that Molex admitted that Wyler's father released his claims to Silent, that argument is not supported by the facts. In support of that argument, Wyler cites Molex's Local Rule 56.1 statement of facts paragraph 37, which in turn cites the Doesburg affidavit. (R. 30, Pl.'s Facts ¶ 37.) In the pertinent averment, Doesburg stated that "Molex responded to the father's demand, essentially denying any responsibility to him and providing a copy of the release we received from Gregory." (*Id.*, Ex. 5, Doesburg Aff. ¶ 8.) That Molex denied that Wyler's father had a *valid* claim in response to allegations against it does not establish that Molex has conceded that Wyler's father had no claim to the shares within the meaning of the Settlement Agreement, which does not limit the term "claim" to those which are valid.

time of the Settlement Agreement. Those claims fall under the "technical fraud" exception in the Settlement Agreement's survival clause. (R. 48, Pl.'s Resp. to Def.'s Add'l Facts ¶ 4.) As a result, we deny Wyler's motion for summary judgment on the grounds that Molex released its fraud claims through the Settlement Agreement.

## III. Pleading Fraud with Particularity

Wyler argues that he is entitled to summary judgment on counts four and five, which are Molex's claims under the Illinois Consumer Fraud Act and Massachusetts General Law Chapter 93a, respectively—because Molex failed to plead fraud with particularly.[10] (R. 34, Def.'s Summ. J. Reply at 12.) Wyler correctly points out that the Federal Rules of Civil Procedure require litigants to plead "the circumstances constituting fraud or mistake . . . with particularity." Fed. R Civ. P. 9(b). Conclusory allegations that fail to set forth the time, place, and content of any alleged misrepresentations do not meet the requisite specificity under Rule 9(b). *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998). We must bear in mind, however, that Rule 9(b) is not meant to encroach upon the general notice pleading requirements of Rule(8); instead, those rules are to be read in conjunction with one another. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782-83 (7th Cir. 1999). Rule 9(b) must be given effect according to its purpose, which is "to ensure that the party accused of fraud . . . is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file

---

[10]Wyler also argues that he is entitled to summary judgment on these counts because "[t]here is no evidence" that he knew of any existing claim by anyone at the time of the Settlement Agreement. We have already found that Molex's evidence of the 1998 release between Wyler and his father coupled with the broad definition of "claim" in the Settlement Agreement preclude summary judgment in Wyler's favor on the issue of whether Wyler committed fraud or misrepresentation in connection with the Settlement Agreement. (*See* Section IIB *infra.*)

17

an effective responsive pleading." *Id.*

We find that Molex's amended complaint alleges the circumstances supporting the fraud allegations underlying counts four and five in a manner that is sufficient to give Wyler an adequate opportunity to respond. Molex alleged the date, content, and circumstances under which Wyler made specific representations and warranties claiming to be the sole owner of Silent shares and similarly alleged the date, content, and circumstances of Wyler's father's claim to those shares which may contradict Wyler's representations. (R. 13, Am. Compl. ¶¶ 17, 20-23.) Moreover, in his opening brief on the motion for summary judgment, Wyler correctly identified Molex's allegation that he committed fraud in connection with his representations and warranties in the Settlement Agreement, which demonstrates that Molex's complaint met the purposes of Rule 9(b). *Lachmund*, 191 F.3d at 783. Even if Molex's complaint failed to meet the Rule 9(b) requirements, Wyler would not be entitled to summary judgment on the fraud claims. The proper remedy for failure to plead fraud with particularity is not dismissal of the claims or striking of the pleading, but allowance of "a motion for a more definite statement, an amendment under Rule 15, or the use of the discovery procedures." Wright & Miller, Federal Practice and Procedure: Civil 3d § 1291 at 16 (2004). For all of these reasons, we decline to grant summary judgment to Wyler on counts four and five of Molex's amended complaint.

## CONCLUSION

For the reasons set forth above, Wyler's motion to dismiss—which we converted to a motion for summary judgment—is denied. (R. 18-1.) This case is set for status on April 6, 2005 at 9:45 a.m. The parties are again strongly urged to exhaust all settlement possibilities before that date.

ENTERED: _____
Judge Ruben Castillo
United States District Court

**Dated: March 24, 2005**